September 10, 1952.

Record No. 3996.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan and Whittle, JJ.

242

The opinion states the case.

*Edmunds, Whitehead, Baldwin & Graves,* for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General,* and *Thomas M. Miller, Assistant Attorney General,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

Herman C. Noblett was convicted by a jury on a warrant charging that he did "unlawfully, lewdly and indecently expose his person to Betty Thomas, age 10, in a manner to shock the public sense of decency and morality." To the judgment entered upon that verdict we granted a writ of error to review the sufficiency of the evidence and the rulings of the trial court in granting and refusing certain instructions.

The little girl testified that as she was walking along North Princeton Circle, a public street near her home in a residential area of the city of Lynchburg, shortly before noon on June 15, 1951, she saw a Ford automobile parked, headed into an alley which intersects Princeton Circle. The car was so placed that it blocked her passage along the crosswalk extending across the alley. As she approached the car she saw a young man, whom she identified as the defendant, sitting in the driver's seat. As she neared the right-hand side of the car the defendant asked her whether she knew where "Miss Jones lived." She inquired, "What Miss Jones?" and he replied, "Miss Nannie Jones." While this conversation was going on, she said, she had gotten within one or two feet of the car. She saw that he was "exposing himself" and "playing with" "his privates." She then proceeded on her way, going around the rear of the car which was blocking the crosswalk. After she had gotten around the rear of the car the defendant called to her and said, "Did you see it?" "Come here and let me show you something." To this solicitation she said "No," and ran on to her home which was "four houses" away.

Upon reaching home the child related what had occurred and the matter was promptly reported to the police. The next day the child was interviewed by two members of the police department, to whom she gave an accurate description of the defendant and of his automobile.

On June 19 the defendant was apprehended while driving his car in the vicinity of the Thomas home. He denied the offense and consented to being taken before the child for possible identification. The child promptly and unhesitatingly identified him.

At the trial the defendant, twenty-three years of age and unmarried, took the stand and denied the charge which the child

had made against him. He denied having seen her before, or that he was at or near the scene at the time the alleged offense took place. He testified that from about 10:30 a. m. until 2:30 p. m. on the day in question he was at his home on Harrison street and engaged in making certain telephone calls in the line of his employment as a salesman of household appliances for Sears Roebuck & Company.

The testimony of the defendant that he was at his home and thus occupied at the time of the incident was corroborated by that of his father and mother with whom he lived.

The case was tried below upon the theory that the warrant charged the accused with the common law offense of indecent exposure. By motions to strike, exceptions to the trial court's rulings on instructions, and a motion to set aside the verdict the defendant challenged the sufficiency of the evidence to sustain the charge.

The gist of the defendant's argument, as stated in his brief, is that "an exposure of the person, irrespective of whether or not the place of exposure is a public one, made in the presence of only one person, is not a crime at common law."

On the other hand, the Commonwealth contends that Instruction No. 2, granted by the lower court, correctly defines the crime of indecent exposure as applied to the present situation. That instruction reads: "The court instructs the jury that if they believe from the evidence beyond a reasonable doubt that the accused on June 15, 1951, while sitting in an automobile on North Princeton Street, one of the public streets of the city of Lynchburg, intentionally exposed his private parts in a manner that same could reasonably have been seen by members of the public using said street and that the child Betty Thomas in using said street saw same, then the jury should find the accused guilty of indecent exposure of his person as charged."

In 67 C. J. S., Obscenity, § 3, p. 23, it is said: "Whatever openly outrages decency and is injurious to public morals is a misdemeanor at common law, and is indictable as such." The same principle is thus expressed in *Winters* v. *People of State of New York,* 333 U. S. 507, 515, 68 S. Ct. 665, 670, 92 L. ed. 840: "Acts of gross and open indecency or obscenity, injurious to public morals, are indictable at common law, as violative of the public policy that requires from the offender retribution for acts that flaunt accepted standards of conduct. 1 Bishop,

Criminal Law, 9th Ed., § 500; Wharton, Criminal Law, 12th Ed., § 16.''

In 67 C. J. S., Obscenity, § 5, p. 25, the author says: ''Indecent exposure in a public place in such a manner that the act is seen or is likely to be seen by casual observers is an offense at common law, and is made an offense by a number of statutes and ordinances. * * *'' The text is fully supported by the cited cases. Among the recent cases discussing the common law offense are *Commonwealth* v. *Hamilton,* 237 Ky. 682, 36 S. W. (2d) 342; *Case* v. *Commonwealth,* 313 Ky. 374, 231 S. W. (2d) 86; *Commonwealth* v. *Broadland,* 315 Mass. 20, 51 N. E. (2d) 961. See also, 33 Am. Jur., Lewdness, etc., § 7, p. 19; Annotation, 93 A. L. R. 996.

Ordinarily, although not necessarily, the place where the exposure is made must be public. Indecent exposure on a street or public highway ''so that one person sees, and others passing by can see, is an offense'' at common law. 67 C. J. S., Obscenity, § 5, p. 26.

In *State* v. *Walter,* 16 Del. (2 Marv.) 444, 43 A. 253, the court upheld an instruction which told the jury that exposure ''on a public highway, within the view not only of the prosecuting witness, but also within the possible view of others who might be passing to and fro along said highway,'' constituted the common law offense of indecent public exposure.

Recently, in the case of *Case* v. *Commonwealth, supra,* it was held that an indecent exposure must be either in the actual presence and sight of others, or in such a place or under such circumstances that the exhibition is liable to be seen by others. (231 S. W. (2d) at page 87.)

In *Commonwealth* v. *Bishop,* 296 Mass. 459, 6 N. E. (2d) 369, 370, it was said that the offense in a public place does not depend upon the number of persons present, but ''It is enough if it be an intentional act of lewd exposure, offensive to one or more persons.''

Likelihood that the act in a public place may be seen by a number of casual observers is sufficient. *State* v. *Goldstein,* 72 N. J. L. 336, 62 A. 1006, 1007 (affirmed without opinion, 74 N. J. L. 598, 65 A. 1119).

Of course, it must appear that the exposure was intentional and not merely accidental. 67 C. J. S., Obscenity, § 5, p. 26; 33 Am. Jur., Lewdness, etc., § 7, p. 19.

*Morris* v. *State*, 109 Ga. 351, 34 S. E. 577, strongly relied upon by the defendant, is not authority for the proposition that an indecent exposure, on a public street, in the presence of a single other person is not a crime at common law. In that case the accused was charged with the violation of a *statute* making "any notorious act of public indecency, tending to debauch the morals," a misdemeanor. The offense was alleged to have taken place in a field not on or near a public highway, and it was there held that such conduct was not a "notorious act of public indecency" within the meaning of the statute. The opinion points out that, "Only one person saw the indecent exposure and there is no evidence in the record that others could have seen" it. (34 S. E., at page 578.) See also, *Wynne* v. *State*, 65 Ga. App. 213, 15 S. E. (2d) 623.

*State* v. *Wolf*, 211 Mo. App. 429, 244 S. W. 962, also relied on by the defendant, was a prosecution under a statute similar to that involved in *Morris* v. *State, supra.* The information, which did not allege the place of the exposure, was held to be defective because it failed to allege that the act was committed in the presence of more than one person. The court there pointed out that the Missouri statute, unlike those in some States, did not provide punishment for an act of indecency or an indecent exhibition in a public place.

It is true that in *State* v. *Wolf, supra,* the court held that the information did not state a common law offense, because it said, "An indecent exposure seen by one person only *or capable of being seen by one person only* is not an offense at common law." (244 S. W., at page 964. Italics supplied.)

But it is quite a different thing to say that an indecent exposure in a public place, seen by one person and capable of being seen by others, does not constitute the common law offense. We have been cited to no authority, nor have we been able to find any, which sustains this latter proposition.

An intentional exposure on a public street where it is likely to be seen by casual observers, whether actually seen by a single person or by several, is an act of "gross and open indecency, injurious to public morals." *Winters* v. *People of State of New York, supra.*

The evidence here amply supports a finding that the exposure was intentional and not merely accidental. According

to the testimony of the child, the defendant accosted her and invited her attention to his misbehavior.

We are of opinion that Instruction No. 2 correctly defines the common law offense with which the defendant was charged. It was for the jury to say whether the exposure in the automobile on the public street, under the circumstances related by the principal witness for the Commonwealth, "could reasonably have been seen," or was likely to have been seen, by persons using the street.

As has been indicated, the main defense of the accused was that the girl was mistaken in identifying him as the offender, and that he was elsewhere at the time the crime was alleged to have been committed. He was, of course, entitled to have these issues properly submitted to the jury.

Bearing on these defenses, he requested and was refused these instructions:

*Instruction E*: "The court instructs the jury that if, after considering all of the evidence introduced in the case, they entertain any reasonable doubt as to whether the defendant is the person who committed the offense charged, then the jury must find the defendant not guilty."

*Instruction F*: "The court instructs the jury that the evidence introduced by the defendant, that he was not at the scene of the alleged crime, need not have been such as to establish this as a fact to entitle him to an acquittal; but if its effect has been such as to bring you to that state of mind that you have any reasonable doubt of his presence there, it is as much your duty to find him not guilty in this case as it would be if you were convinced he was not there or was otherwise not guilty. If there is a reasonable doubt in your minds as to this, *it is a fact in the case that he was not there, and it is to be by you so considered in his behalf as much as if proven to be true beyond any question of doubt.*" (Italics supplied.)

The issue of his identification was properly set forth in Instruction E, and since it was not embodied in any of those granted, the instruction should have been given.

Instruction F was offered on the theory that it properly submitted to the jury the issue of the defendant's proof of alibi. It is urged that an instruction in this language was approved in *Mullins* v. *Commonwealth,* 174 Va. 472, 475, 5 S. E. (2d) 499, 500. That is true, but the form of the instruction was not there dis-

cussed, and upon further reflection we are convinced that the italicized language is not a proper statement of the law.

In *Draper* v. *Commonwealth*, 132 Va. 648, 111 S. E. 471, we approved the following statement from the text in 2 Am. & Eng. Enc. of Law, 2d Ed., p. 56: "The true doctrine seems to be that where the State has established a *prima facie* case and the defendant relies upon the defense of alibi, the burden is upon him to prove it, not beyond a reasonable doubt, nor by a preponderance of the evidence, but by such evidence, and to such a degree of certainty, as will, when the whole evidence is considered, create and leave in the mind of the jury a reasonable doubt as to the guilt of the accused." (132 Va., at page 663.)

We again approved this statement in *Fenner* v. *Commonwealth*, 152 Va. 1014, 1020, 148 S. E. 821, and we now adhere to the same view. In so far as the decision in *Mullins* v. *Commonwealth, supra,* approves the form of the instruction in question, it is overruled.

While the trial court was correct in refusing Instruction F in the form in which it was offered, at a new trial the defendant will be entitled to an instruction on alibi which conforms to the principles which we have here stated.

We are of opinion that the subject matter of Instructions C and M, likewise refused, was properly embodied in other instructions granted by the court.

For the failure of the court to grant Instruction E, *supra,* the judgment is reversed, the verdict set aside, and the case remanded for a new trial.

*Reversed and remanded.*